All right, we will, I'm pleased to be here, United States v. Oliver and Mr. Zirkin. May it please the court, good morning, Gerald Zirkin representing Winston Oliver. Your honors, at his sentencing, Mr. Oliver called co-defendant Brown to authenticate letters that Brown had sent to him. The court allowed Brown to assert a Fifth Amendment privilege over Oliver's objection. Contrary to the government's brief, this is a de novo review of that decision. This is not an evidentiary question. This is a question of whether he was entitled to take the Fifth Amendment privilege. And it is a mixed question of law and fact. Your honors, I think that as a practical matter, so neither this court nor the Supreme Court has ruled on the extent of the Fifth Amendment privilege after direct appeal is over. And it becomes extremely complicated if you draw bright lines, you know, whether it's after the first 2255 is filed. This court, this case demonstrates that. Didn't he assert the Fifth Amendment privilege on the stand? Didn't the district court put him on the stand and Mr. Brown assert the privilege there? He did after he indicated that he was willing to answer. I mean, there was no there was no doubt that he wanted to assert a Fifth Amendment privilege. There was not, your honor. Of course, the Fifth Amendment privilege. Mr. Brown is not limited in asserting a Fifth Amendment privilege to a criminal prosecution or investigation of himself. He can assert it at any point at any time if he's entitled to do it. Yeah, he's in. He's entitled. He's entitled to do that. And your honor, I'm not sure what I what I said. I'm not sure that that I was clear. He can do it if he is, in fact, entitled to it. Yeah. But in this case, I think Judge Hudson made a point that there were still ongoing proceedings with respect to Mr. Brown. I guess they were 2255 proceedings or retroactivity questions. So if why, why wouldn't the why wouldn't the privilege attach to Mr. Brown if there were ongoing proceedings that posed a potential of prejudice if he were to respond to the questions? Yes, sir. The because after the direct appeal is over and you draw that bright line, you have it all the way through your sentencing and through direct appeal. And sir, no question about that. The question after that is how does does that continue and under what circumstances? So that has not been addressed, addressed, as I said, by either the Supreme Court or this court of appeals or, quite frankly, really any other court of appeals. There are two district court cases that address it, one from the District of Arizona, Milky, and the other from the Eastern District of New York, Pipitone. And they say that once the direct appeal and cert are over, that the determination of whether a witness is entitled to invoke the Fifth Amendment privilege requires is dependent upon whether or not there is a real a substantial and real hazard of incrimination. So it is a fact specific examination as to that defendant and the evidence which he is being asked. Just listening to what you just said, if it's if it is a fact specific determination which hinges on the particular circumstances. In other words, how material is Mr. Brown's testimony and how great is the prejudice likely to be and everything? Is this not a matter that we would defer to the district court on? No, sir. The right to take the privilege is a matter of fact and law that, mixed question of fact and law, that this court, according to the Lara case, that this court decides on de novo review. Well, let me ask you this. I'm a little confused about what Mr. Oliver sought to show by authenticating the letters. And I don't understand how it impacts the outcome of his case. What was he trying to show? Yes, Judge Floyd. He was trying to show that, in fact, so. Mr. Brown's statement to the police was introduced at trial, and that statement had implicated Mr. Oliver as having provided him with the gun. Mr. Oliver was trying to show that he should that, in fact, that was not true, that that testimony was false. It wasn't in order to establish innocence. It was in order to establish the whether the guidelines should apply. He would have been presumably guilty regardless of whether he'd supplied him with the gun under the government's evidence. So what he was trying to do is I should that should not be assessed against me as part of my sentence, whether it's part of the guidelines. He received a because the 924 C's had been thrown out. He was assessed seven levels for the gun. But in addition to that, the upward variance was relevant to that as well. So he was trying to attack the basis of the sentence. So how do those letters show that? Well, the letters the letters showed that he basically said what he and quite frankly, I can't read them all. You know, just the handwriting. But he was trying to show through the letters that he where he was saying to Oliver was I didn't tell the police what they say. I told you. What? Yeah, I didn't tell the police what they say. I said one thing when you mentioned in the course of your comments, the upward variance here and you made a lot of different claims. But how can we criticize the district court for the upward variance? If it is true, as the government contends that he had 27 prior convictions and seven prior felonies and that he had been in confinement. For eight years. And that had no effect or apparently on his desire to recruit somebody for an armed robbery of a small business. I mean, you made a lot of claims here, but one. And I and I think that's fine. But I don't understand how in the world somebody with this, these kinds of convictions on his record, seven felonies, 28, 27 prior convictions, eight years of confinement, no effect. And how can we how can we possibly overturn Judge Hudson on on something like that? Your Honor, I would address it only briefly to say that many of those were part of his juvenile record. And that indeed, in the most recent amendment to the federal guidelines of 5H1.1, the federal guidelines now recognize the fact that we have to take into account when we analyze a juvenile record, what the juvenile circumstances were. The probation report in this case for Mr. Oliver is unlike any promotion probation report I think I've seen in the past. Which is that it is detailed as to the problems of his upbringing, of his failure, his failure, his parents' failures, the system's failures to give him the care that was needed. So the juvenile record has to be taken, not with a grain of salt, but it has to be taken in context. What evidence do we have that the district judge didn't take everything into account? I mean, there's no limitation placed on the information that can come before a district court at sentencing. And it was certainly up to the district court to take into account that some, I don't know how many, certainly not all of the prior convictions were juvenile. That's not always to excuse them. But given the sheer number of convictions, they can't all be juvenile convictions. They are, Judge, and many, many of them are driving on a suspended license conviction. Now, I understand that that's a violation of the law, but they're also not armed robberies. And they're not violent crimes. They're not serious crimes. They are driving a suspended license. And people get in a cycle where they can't. We know this is true. You can't pay your fines, your license is suspended, and you get more and more driving on suspensions. But that isn't the kind of thing that justifies, I would respectfully suggest, an upward variance. I would like, though, to turn, because more importantly, I think, in this case, is the consecutive sentences. Before you get into that, why don't we go back to what I thought would be your threshold point that you have to get through. And as I understand it, we're holding an appeal of Mr. Brown's in advance now. But I would think you would need to explain to us why Mr. Brown is not at risk for Fifth Amendment purposes. Yes, Your Honor. And it's because he has affirmatively accepted responsibility in court and in his letters to the judge and in his letters to the victims for having the gun, for shooting them, for the armed robbery. He has personally done that in his statements to the court and, as I said, in his letters. And he's done it through his counsel. He has done it in sentencing allocutions, sentencing memorandum by his lawyers. And so there is nothing that he could say that would change what already exists in the record. What exists in the record is, I did the robbery. I am responsible for it. Nobody else is responsible for what I did. I am. I took the gun in there. I shot at the cashiers. I shot at Mr. Edmonds, shot him four times. I did all of that. It's mine. So if he – If Brown were to have testified and the government then elicits information, as it said it would, on cross-examination, that he has repudiated earlier statements upon which maybe his prior conviction and sentence were based, you think that offers no jeopardy to him at all? Not given everything that he has said and done. I do not. There's a certain point at which piling more on just doesn't matter. And he, of course, has received upward variance, and the maximum sentence on both counts consecutively. So what is he going to say now that is going to not simply just be irrelevant piling on to what he's already done and what the judge has already found? The judge can only do but so much to him, and he's already done it. So, no, I don't think that there can be any effect. He's taken it all on himself. There's nothing he can say now that would change the equation. He doesn't have a right to commit perjury, and so, you know, that's not an issue. He can't get acceptance of responsibility because he went to trial, and he's admitted responsibility. So there is simply no, there's nothing there can hurt him any more than that. And, in fact, the government hasn't really been able to identify anything. Now, one of the things about the Milky case and the Pipitone case is that what they talk about is it has to be, oh, and also, although I don't usually cite state Supreme Court cases in this court, but I did in this instance because it seemed it was so directly on point, that is the case out of the Kansas Supreme Court. And what they said was it has to be direct and specific, and the government has never been able to identify anything direct and specific. At Joint Appendix, page 804, the government gave its reasons of why he might be harmed. He might say he was more involved and Oliver less. It's inconceivable. He is on the video going into the store. He's not going to say I was more involved and Oliver less. He said he might say Oliver didn't give him the gun. It would put more onus on him. He said it's no more onus than taking the gun, whoever gave it to him, and walking in there and shooting at the cashiers and shooting Mr. Edmonds four times. They said if his statements made him an organizer or a leader, obstruction based on the letters. He didn't submit the letters to the court. I don't understand where their idea of obstruction comes from. So he wrote a letter to his co-defendant who was also incarcerated. Your Honor, I see my seconds are dwindling. Isn't it a finding of fact with respect to the obstruction enhancement that he prevailed upon love? His signed affidavits whose falsity he knew? He didn't know the falsity, Judge. That's the whole point. How could he know it? She thought that Roderick Young, D.A. Roderick Young, she thought he was a. . . What do we do with the finding of fact on the part of the district judge with respect to the obstruction enhancement? I think there was a clear attempt here both in the affidavit he instructed M.S. Love to sign and the attempted recruitment of Brittany to suborn perjury. Two different instances. First of all, it's clearly wrong. She didn't know that it was false. How could he know that it was false? He wrote it for her. She had told him this is . . . the federal agents pressured me. She didn't realize it was really the state agents that did it, and when she put Roderick Young in, she didn't realize that he was in fact an AUSA. So she messed it up. He had no way to know that that was false. And she, prior to the hearing, reaffirmed to me, and that is in the record, she reaffirmed to me that in fact she was wrong about the identity and he didn't know it. So the judge is wrong about that. As to the other instance, Your Honor. . . No, you say not just wrong but clearly erroneous. Clearly erroneous. And there's no evidence to support it. Not only with respect to love but with respect to Brittany, too? Well, no, no. Did he miss them both? No, that's not. . . I'll tell you why he missed Brittany. It's not that. To be obstruction, it has to be a substantial step. Giving the name Brittany without a last name, without any contact information, no phone number, no email, no address, just Brittany, find her. That is not a substantial step to constitute obstruction. Thank you, Your Honor. Thank you, Mr. Zirkin. You have some rebuttal time. Mr. Honnold, pleasure to hear from you. Thank you, Your Honor. Good morning and may it please the Court. Daniel Honnold for the United States. This Court should affirm because the district court did not abuse its discretion either in declining to force Mr. Brown to testify at Mr. Oliver's resentencing hearing or abuse its discretion in sentencing Mr. Oliver to the statutory maximum consecutive sentence of 480 months in this 2255 resentencing. I'll begin where my friend did with the Fifth Amendment issues. I heard my friend to dispute what the applicable standard of review is. Our fundamental submission is that in a situation in which a district court is both balancing competing interests . . . Can you speak up a little for me? Yes, Your Honor. Is that better? Yes. It's my hearing, it's not your problem. Yes, Your Honor. In a situation in which a district court is being tasked with balancing two competing constitutional prerogatives, one on the part of the witness and one on the part of the defendant, and is further being instructed to engage in a particularized fact-bound determination about the credibility of the witness's potential risk of incrimination from being forced to give the testimony, that's a very classic type of situation in which, similar to balancing the 3553A factors, doing 403 balancing. These things are typically committed to the discretion of the district court and we submit that that is the standard that should apply here. There can be two different standards for two different things, I think, because there's an initial question of whether or not the ability to exercise the right exists. That strikes me as probably de novo review. Then there's a subsidiary question on, once the district court made that determination, how did it go about implementing it? I think that's where you get to the abuse of discretion part. I agree completely, Your Honor. Of course, as we point out in the Flint Water case from the Sixth Circuit, these questions will ultimately reduce to the same question, where if a district judge commits an error of law, that's going to be an abuse of discretion. It's not inconsistent to have those two dynamics at play in the same situation. I'll just point out in the Laura case that my friend relies on, that was a situation in which the district court was assessing whether or not the defendant himself was going to have a privilege that was recognized. That's a very different procedural case from what we have here, where you've got a defendant attempting to compel a witness to lose his Fifth Amendment rights. You don't have the balancing at play in the Laura case. The de novo review there is simply not applicable. Mr. Zirkin says, as regards to Mr. Brown, that he was at no risk, and therefore the privilege shouldn't apply. Why don't you tell us why you think he's wrong about that? Yes, Your Honor. As the district court found at JA 811, in the context of this case, with his deep familiarity with the facts and circumstances, both of the previous trial record and what was at issue in the sentencing hearing, the district court did not clearly err in finding that there was a substantial risk of prejudice to Mr. Brown from being forced to testify about these letters. There are two, I think, possible dynamics at play here. One is the potential risk of sentencing exposure. As we've discussed today, Mr. Brown's case is currently on direct appeal from his own de novo resentencing in a 2255. He's essentially in the exact same procedural posture as Mr. Oliver is right now, except that his case is being held in abeyance. If this court were to grant Mr. Brown relief and resentence him after a situation in which he's been compelled to testify about these letters and his involvement in this robbery scheme, that could very well prejudice his ability to seek a lower sentence. The government would be able to present that new information to the court, and it could further support the government's request, re-request should relief be granted for a top of the, not a top of the guidelines, but an upward variant sentence to the statutory maximum, which is what we received in the last instance. There's also the possibility that it could open him up to additional charges. This isn't really fleshed out as much in the hearing, but in the second letter that's purportedly from Mr. Brown to Mr. Oliver, one of the reasons why Mr. Brown is purportedly attempting to convince Mr. Oliver that he didn't talk to the police is on the basis of, well, if I had talked to the police, those other charges against you wouldn't have been null-prost, but they were null-prost. And you can see in the PSR that there are a series of null-prost robbery and burglary offenses from around the same time. So there's, even putting aside the notion, which we assert in our brief, that sentencing exposure on its own is enough to allow someone to invoke the Fifth Amendment right. He's also got the potential for other charges, which would, I think, unquestionably be sufficient. As to the particularity of that, I think we have to be very careful when we're talking about the invocation of a Fifth Amendment privilege. To require more granularity than that was posed here would sort of defeat the purpose of having the privilege in the first place. If someone has to get up there and say, because I'm afraid of being charged with X, Y, or Z, that kind of undoes the whole purpose of why we have the privilege in the first place. So we think that the level of specificity and granularity was adequate here without exposing Mr. Brown to the risks that are inherent in being compelled to testify. Taking a step back, I do want to make clear for the Court what the government's position is on when the right attaches and reattaches at certain procedural points. I heard my friend say that failing to draw a bright line rule after a petition for certiorari is denied, doing anything other than having that be the rule would cause confusion. I don't think that's quite right, and I don't think it tracks with principles of fundamental fairness to people who are attempting to invoke these rights. Our submission is that if someone's conviction or sentence, the finality of that is disturbed to a sufficient extent that it is no longer fully final, as in the case of the grant of a 2255 motion and a resentencing thereon, then the privilege is going to reattach at that point through the lifetime of that resentencing appeal. Can I return for a minute to the issue that Mr. Zirkin has highlighted on the Fifth Amendment privilege versus the Sixth Amendment right to compulsory process? I'm always looking for ways to keep things a bit narrow, and if we affirm here we're saying nothing more than there was no abuse of discretion considering the particular circumstances of the case, among them the materiality of what Mr. Brown might have to offer, the degree of prejudice that Mr. Brown might suffer, in other words, it's a very particular decision. But if we reverse and say that the Sixth Amendment right overrides the Fifth Amendment process, that's a much broader ruling, and it would be an incentive in every case to hold that the Sixth Amendment right overrode the Fifth Amendment privilege, even where the Fifth Amendment, the assertion of the privilege may have had compelling reasons So the affirmance here seems to me to be fact-specific to this particular case, and the reversal seems to me to send a broad signal that in a clash between the Fifth and Sixth Amendment values that the Sixth Amendment presumptively controls. And I think we could do some real damage to the Fifth Amendment in that kind of situation because there may be compelling reasons that people want to not to incriminate themselves, and I'm nervous about sending that big a signal. I share the Court's reservations on that ground. A reversal on that ground would be disruptive to, I think, a long line of settled case law in which the proper invocation of the Fifth Amendment privilege is going to override the Sixth Amendment right-to-do process. And you'd be doing it in a situation in which a defendant is attempting to compel the testimony of someone to be a witness for them at their resentencing. It would be an odd posture in which to issue a reversal on those grounds, especially in a situation where, as here, we've got strong arguments that any error, either legal error or in the particularity analysis, would be harmless on this record. We've got, I think the Court needs to really look at two sides of the same coin, one being is what is the weight, the potential weight that these letters could have had had they been admitted and the Court saw them for what they were against the second side of the coin, which is all the other completely independent evidence that the Court had before it of Mr. Oliver's guilt, of Mr. Oliver's responsibility for these sentencing enhancements, and the 3553A factors. And I think when the Court looks at it through that lens, it's pretty clear that the letters themselves carry very little weight. They don't claim to establish his factual innocence in any sort of way. They're just sort of protestations that Mr. Brown said he never spoke to the police at a certain really unknown time in the past. The most it could do is possibly cause the District Court to question the veracity of Special Agent Umphlett's sworn testimony at trial that Mr. Brown did in fact speak to him about this case, and there's no evidence on this record that the Court would have been that persuaded. And even if it had been in completely disregarded Special Agent Umphlett's recitation of Mr. Brown's confession, there was a tremendous amount of independent evidence establishing that Mr. Oliver was the mastermind, Mr. Oliver provided the gun, both through witness testimony and DNA and post hoc efforts to cover up by, for example, calling his pastor and asking him to hide the gun and get a message to his brother to do that. So there's ample grounds to affirm both on the merits and even on assumed harmlessness error analysis. I'm happy to turn, Your Honors, to the sentencing questions. I think the only areas that my friend touched on were the obstruction enhancement and the upward variance and consecutive sentences which really go hand in glove. So starting with the obstruction enhancement, as the District Court very clearly found that it is subject, as Your Honor mentioned, to clear error analysis. Counsel, at this point, I'm gonna ask my good colleagues if they have some questions to pose to you. We have no questions, thank you. We'd ask that this Court affirm. Thank you. Mr. Zirkin. Thank you, Your Honors. Only briefly, of course, I didn't actually get to address the consecutive sentences issue, but I did want to say something about that. The guideline... So Congress's intent is clear that we should not have consecutive sentences for conspiracy to commit an offense and for the substantive object of that offense. Congress required that the guidelines reflect that general rule. I'm thinking of our, I guess, Callinan decision and the Supreme Court's Diffenbaugh case, and both our own court and the Supreme Court have held in that case, as I understand it, that a substantive Hobbs Act violation and conspiracy to commit that same violation can be sentenced consecutively. And that seems to me, both from our court and the Supreme Court, to be very, very close to what we're talking about here where you have a conspiracy and then you have a later substantive act, the later substantive act being the attempt. It's not later. I mean, that's what distinguishes this case. I agree with the court as to what those cases say, but they are not addressing the facts in this case. The facts in this case are that they are simultaneous. If they say it can be consecutively sentenced, then it would be a matter of the district court's ability to do so, and the question that you're saying that I'm not paying attention, or that those decisions didn't apply to the facts of this case, but the facts of this case seem to be a good one for consecutive sentences in this sense. There's so much time and space between the conspiracy of attempt and the substantive crime, which again is attempt, and the planning for this robbery took place over a year. This gentleman made multiple attempts to recruit an accomplice. After a year, he finally settles on Mr. Brown, who says, well, I wouldn't have done this if Mr. Oliver hadn't leaned on me. Then you've got the Supreme Court saying that collective action poses especially pernicious dangers to society because these are the kinds of things that ought to be sentenced consecutively. I understand your point, but I feel like that I've got two precedents staring me in the face, and if this, under these circumstances, if this can't be, if conspiracy and substantive crimes convictions can't be sentenced consecutively, I'm hard-pressed to think of a situation where this kind of conspiracy, substantive crime, would ever be permissible to impose a consecutive sentence. Respectfully, Your Honor, that time frame that you've talked about, the conspiracy didn't exist. The conspiracy begins when they are sitting in the car outside of Mr. Fuel, and it is immediate, it is consummated, the conspiracy is created as they're sitting there, and Brown, according to the government's evidence, Oliver keeps trying to get Brown to do it, and Brown says, no, no, no, and finally he says, I'll do it. We have a conviction, do we not? Yes, you have a conviction. All I'm saying is, Your Honor, that the time frame that the court said would satisfy why you have to have consecutive sentences, that time frame is not, the conspiracy doesn't exist during that time frame. That is Oliver acting on his own. He's not working with anybody else. There is no conspiracy. Well, what about all of these people that he tried to recruit? One other person in New York who turns him down. There's no conspiracy there, and if there were a conspiracy there, it's not the conspiracy with Brown. The conspiracy with Brown occurs as a sitting in the parking lot, and he marches right in, and he commits it, commits the crime. The conspiracy and the substantive offense are physically and chronologically concomitant. They both are the same time frame. This is the exception to those cases the court has said, not that they prove the rule. I'm still looking at things with respect to the Hobbs Act, which says that the substantive Hobbs Act violation and the conspiracy to commit it can be sentenced consecutively, and the consecutive sentences versus concurrent sentences are something for a classic district court call, and I would think the fact that this individual attempted over the course of a year to recruit an accomplice to bring this armed robbery off would be a permissible factor for the district court to consider in deciding whether to consecutively sentence. This is not a crime that was born on the day that the attempt was committed. It was a crime that was planned over the course of a year with repeated recruitment efforts. He had it in mind for a good bit of time. It was the case for concurrence is where the crime is born, perhaps, on the very day that the conspiracy is born on the very day that the substantive crime is committed, but that's not the case here. I would disagree. This is exactly the case here. The conspiracy was born as they're sitting outside of Mr. Fuel. It doesn't exist before that. It takes two people to create the conspiracy. Mr. Brown is not part of the conspiracy until they're sitting there. No matter what he's thinking about in advance and going through his head, he could do that for his whole lifetime. That's fine, but that doesn't disable the district court from taking into account with respect to the conspiracy conviction and the substantive conviction that a consecutive sentence is warranted, and the reason the Supreme Court says is that collective action is particularly dangerous, which would apply in a situation where both Brown and Oliver were engaged in the armed robbery of this business, and so the concern about collective action is present here, and the degree of time and the desire to bring this off stretching over a year would additionally be a reason why a district judge, in his discretion, would say this warrants consecutive sentences. Your Honor, when the two... When the events happened simultaneously, the two crimes, that is the conspiracy and the substantive offense, are concomitant. They both happened at the same time. You do not have the circumstances that has led the Supreme Court to say that conspiracies have the additional danger of people doing other offenses than that which was originally planned. That is what the Supreme Court case talks about. Other crimes will be committed in addition to the single purpose of the conspiracy, because over the course of time that will happen. There was no over the course of the time in which other crimes could be committed. Yes, but what do we do with a statement right out of the Supreme Court? District courts have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose. The facts here are, with the year-long planning and bringing Mr. Brown into the deal, that would seem to me to be well within a district court's discretion to do what it did. I understand, Your Honor. Your Honor, I would just note, as a final word, that the 5G 1.2, which talks about concurrent and consecutive sentences, Application Note 1 notes that the total punishment is to be imposed on each count and the sentences on all counts are to be run concurrently. And it then defines total punishment as, for the purposes of that guideline, it defines total punishment as the offense and the criminal history and, looking at the chart, it doesn't include, in 5G 1.2, it does not include an upward variance as the basis of that. Thank you. Thank you. Pardon me? Okay. I want to thank both of you for what I thought was a very able argument. Mr. Honnold, I know you had to prepare under exigent circumstances, and I hope you will carry back the word to your office that you did a fine job. And Mr. Zirkin, I always enjoy it when you argue. You and I get a bit combative, and if you don't want to shake hands with me, you don't have to. I will fist bump you. You won't swing. But you're a very able advocate, and I really appreciated your argument this morning. Yes, and both my colleagues tell me to express special appreciation to you for taking on this court appointment. Thank you very much. All right, we'll adjourn court and come down and re-counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Henry F. Floyd